UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
RUDY BONGIORNO,

                       Petitioner,                       22-mc-211 (PKC)

      -against-                          OPINION AND ORDER

UNITED STATES OF AMERICA,

                       Respondent.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Petitioner Rudy Bongiorno moves under Rule 41(g), Fed. R. Crim. P., for the return of the proceeds of a certain E*Trade Account that was liquidated pursuant to a Final Order of Forfeiture entered on October 19, 2016. United States v. Annette Bongiorno, 10-cr-228 (LTS) (Doc 1473).

        Briefly, Mr. Bongiorno is the husband of Annette Bongiorno, who was convicted after trial on ten counts, including conspiracy to defraud Madoff Securities investment advisory clients. Following the entry of a Preliminary Forfeiture Order on December 19, 2014 (Doc 1216), Mr. Bongiorno identified his interest in the E*Trade Account. Nearly a year and a half later, represented by counsel, Mr. Bongiorno consented to an Amended Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment on June 14, 2016 (Doc 1458) (the "Amended Preliminary Order").

        The Amended Preliminary Order identified the E*Trade Account in the joint name of Mr. Bongiorno and his wife as "Forfeitable Property" but allowed Mr. Bongiorno and the Madoff bankruptcy trustee to withdraw certain securities from the E*Trade Account.

The 31-page Amended Preliminary Order was signed and stipulated to by Mr. Bongiorno and his lawyer and entered as an Order by Judge Swain. It provided, among other things, that Mr. Bongiorno would retain the securities identified on a Schedule A that were held in the E*Trade Account and that the remainder of holdings in the E*Trade Account and other property would be transferred to the Trustee or forfeited to the government. At paragraph 3, the Amended Preliminary Order provided that:

> The defendant and Rudy Bongiorno withdraw and relinquish any claim to the Specific Property and the Trustee Recovered Stocks and agree that they will not object to the entry of a Final Order of Forfeiture or otherwise contest the judicial forfeiture of such property under the U.S. forfeiture laws or assist a third party in doing so.

(Amended Preliminary Order ¶ 3.) The government agreed that it would not seek forfeiture against the securities released to Mr. Bongiorno from the E*Trade Account. (Id. ¶ 4.)

A proposed Final Order of Forfeiture was filed on October 14, 2016 (Doc 1472) and without objection was entered as an Order on October 19, 2016 (Doc 1473). No appeal was filed by Mr. Bongiorno. With an adjustment for a stock split in one of the securities in the E*Trade account and other variations in text, the Final Order of Forfeiture confirmed and implemented the outlines of the agreements reflected in the Amended Preliminary Order. The United States Marshal Service was authorized to dispose of the balance of the property not going to Mr. Bongiorno or the Madoff trustee.

Mr. Bongiorno's present petition invokes Rule 41(g), which provides in pertinent part as follows: "A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." In support of the petition, Mr. Bongiorno asserts that he had recently learned that the remaining securities (i.e., not those that he was expressly allowed to keep) were scheduled to be liquidated, and essentially argues de novo

why they ought not be subject to forfeiture.[1] He asserts that the government would not be able to prove that the subject property meets the statutory requirements for forfeiture. In response, the government relies upon principles of finality, the express consent to the Amended Preliminary Order and the lack of an appeal from the Final Order of Forfeiture.

In his reply memorandum, Mr. Bongiorno does not take on the government's analysis of the Final Order of Forfeiture but instead asserts overreach and duress: "The Government should not be permitted to claim title to property given that its 'settlement offer' was an abuse of power, lacked consideration, was shockingly excessive, and made while Bongiorno was under six years of extreme duress while his wife was threatened with prison time." (Reply Mem. at 1.) He is candid that his present petition seeks a do-over on the issue of forfeiture resolved in the Final Order of Forfeiture: "Now armed with legal counsel and expert analysis, Bongiorno renewed his request that the Government produce a tracing analysis showing the E*Trade Account constitutes tainted funds, which the Government flatly refused." (Id. at 4.)

The Court analyzes Mr. Bongiorno's motion as one made under Rule 60(b)(6), Fed. R. Civ. P., a rule that he expressly invokes in his reply memorandum. (Id. at 9.) The Rule states: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (6) any other reason that justifies relief." The motion "must be made within a reasonable time . . . ." Rule 60(c)(1).

The Court first concludes that the nearly six years between the entry of the Final Order of Forfeiture and the filing of the petition is not a reasonable period of time. "In considering whether a Rule 60(b)(6) motion is timely, [a court] must scrutinize the particular circumstances of the case, and balance the interest in finality with the reasons for delay." PRC

---

[1] The Court denied Mr. Bongiorno's application for emergency relief. (Doc 7.)

Harris, Inc. v. Boeing Co., 700 F.2d 894, 897 (2d Cir. 1983).[2]  A reasonable person long ago would have awakened to the circumstance that he had been a victim of overreaching and duress "while his wife was threatened with prison time." (Reply Mem. at 1.)  Indeed, any "threat[]" of prison time for his wife long ago became a reality upon sentencing by Judge Swain on December 9, 2014.  That Mr. Bongiorno recently learned that the securities were to be liquidated by the United States Marshal Service provides no valid reason for not acting sooner because the Final Order of Forfeiture authorized such action.  The interests of finality protect the opposing party from the burden of revisiting matters long ago resolved and forgotten. It also protects the judicial system from reexamining a settled issue in a collateral proceeding before a different judge.  The interest of finality outweighs the proffered reasons for delay.

Second, "relief [under Rule 60(b)(6)] should only be granted where the moving party has demonstrated 'extraordinary circumstances' or 'extreme hardship.'" PRC Harris, 700 F.2d at 897 (citations omitted).  None has been presented here.  The fact that Mr. Bongiorno regrets choices that he made while represented by counsel years ago and is "[n]ow armed with [new] legal counsel and expert analysis" (Reply Mem. at 2) hardly qualifies as extraordinary or extreme.  The mere assertion that a negotiated resolution, as was the case in the Amended Preliminary Order, was imprudent or less than what he might have received in a litigated outcome is neither an extraordinary circumstance nor extreme hardship.

The motion (Doc 2) is DENIED.  The Clerk shall terminate the motion and close the case.

---

[2] See Williams v. Comm'r of Correction of State of N.Y., 122 F.3d 1058 (2d Cir. 1997) (citing cases under Rule 60(b)(6) in which one year and 17 months were each found not to be reasonable period of time) (summary order).

- 5 -

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
October 11, 2022